# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:

**Central Oklahoma United Methodist**
  **Retirement Facility, Inc.**
  **d/b/a Epworth Villa,**

                            **Debtor.**

Case No. _____

**Chapter 11**

## DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) PROVIDING FOR LIMITED MODIFICATION OF THE AUTOMATIC STAY, AND (IV) SCHEDULING FINAL HEARING, AND BRIEF IN SUPPORT; AND NOTICE OF OPPORTUNITY FOR HEARING

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.** A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, OLD POST OFFICE BUILDING, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OKLAHOMA. IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OK 73102. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION ON THE SIGNING ATTORNEY AND TO ANY OTHER PARTY SPECIFIED. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED WITHOUT HEARING.

EMERGENCY RELIEF AND AN EXPEDITED HEARING HAVE BEEN REQUESTED. IF THIS COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS TIME TO RESPOND. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AND IMMEDIATELY SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR Epworth Villa AND ANY OTHER PARTY SPECIFIED. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.
**********************************************************************************

Central Oklahoma United Methodist Retirement Facility, Inc., d/b/a Epworth Villa, debtor and debtor-in-possession in the above-captioned case ("Epworth Villa"), files this emergency motion (the "Motion") for entry of interim and final orders pursuant to Bankruptcy Code Sections 105, 361, 362, 363 and 507, and Bankruptcy Rules 4001((b) and 6003, as follows:

(i)      Authorizing use of Cash Collateral (defined below), in which only Oklahoma County Finance Authority ("OCFA") and BancFirst, as Trustee (the "Trustee") have an interest;

(ii)     For the purpose of protection of the interests of its residents, the value of its estate and payment of its creditors through continued operation;

(iii)     For so long as Epworth Villa complies with all obligations and covenants of the Mortgage/Security Agreement (defined below); and

(iv)     With replacement liens and superpriority administrative claims to be provided to OCFA and the Trustee.

In support of this Motion, Epworth Villa represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(M) and 1334. Venue of Epworth Villa' chapter 11 case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought hereby are Sections 105, 361, 362, 363 and 507 of title 11, United States Code ("Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

### Epworth Villa

3. Epworth Villa is an Oklahoma not-for-profit corporation formed in 1986, and a wholly-owned subsidiary of Epworth Living, Inc., which is likewise an Oklahoma not-for-profit corporation.

4. Affiliated with the Oklahoma Conference of the United Methodist Church, Epworth Villa is a continuous care retirement community for persons age 62 and older, located at 14901 N. Pennsylvania Avenue, Oklahoma City, Oklahoma 73134. Epworth Villa is fully accredited by CARF-CCAC, an independent organization that evaluates continuing care retirement communities.

5. In addition to providing independent living facilities, Epworth Villa offers assisted living, memory care assisted living, nursing care services and a skilled nursing facility. Presently, Epworth Villa includes 264 independent living units (cottages and apartment homes), 118 assisted living units, with maximum capacity of 130 beds, and 87 nursing beds that are dually certified for skilled or long term patients with common areas, community centers and other facilities. It is undergoing a $65 million renovation and expansion project that is projected to be completed in the spring of 2015.

6.      Epworth Villa's facilities, and the construction, renovation and expansion of its facilities, are financed through the issuance of revenue bonds by OCFA under a bond indenture from OCFA to the Trustee.  The bond proceeds have been loaned to Epworth Villa pursuant to the terms of a series of first mortgage notes in the current aggregate principal amount of $87,835,000 payment of which is secured by a mortgage and security agreement, by which Epworth Villa pledged all its real and personal property to secure the first mortgage notes.

7.      This bankruptcy filing was precipitated by the entry of a Judgment against Epworth Villa by the District Court of Oklahoma County, Oklahoma, in Case No. CJ-2011-8387: *William Hicks, individually and as Guardian Ad Litem for Virginia Hicks v. Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa Health Services*, in the amount of approximately $15 million.  Epworth Villa will appeal that Judgment.

8.      Unable to obtain a stay of execution to protect it from execution on the Judgment, Epworth Villa reluctantly initiated this Chapter 11 bankruptcy case to allow it to continue operations and preserve the status quo for the benefit of its vulnerable residents, employees, benefactors, creditors and prospective residents, while simultaneously prosecuting its appeal of the Judgment which it believes is excessive and unjustified.

**Case Status**

9.      On July 18, 2014 (the "Petition Date"), Epworth Villa filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Oklahoma (the "Bankruptcy Court") commencing this case.

10.      Epworth Villa continues to operate its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  The United States Trustee has not yet appointed any official committees in this case, and no request has been made for the appointment of a trustee or examiner.

**Bond Debt**

11.      Epworth Villa is the maker of the following promissory notes (collectively, the "Notes"), payable to the order of Oklahoma County Finance Authority ("OCFA"):

a.      First Mortgage Note, Series 2004B, dated January 5, 2005, in the original principal amount of $5,040,000 payable with interest thereon as therein provided;

b.      First Mortgage Note, Series 2005A, dated December 7, 2005, in the original principal amount of $11,460,000, payable with interest thereon as therein provided;

c.      First Mortgage Note, Series 2005B, dated December 7, 2005, in the original principal amount of $2,000,000, payable with interest thereon as therein provided;

d.      First Mortgage Note, Series 2012A, dated December 19, 2012, in the original principal amount of $72,765,000, payable with interest thereon as therein; and

e.      First Mortgage Note, Series 2012B, dated December 19, 2012, in the original principal amount of $2,605,000, payable with interest thereon as therein provided.

12.     To secure its indebtedness to OCFA evidenced by the Notes, Epworth Villa and OCFA entered into the (1)  Mortgage and Security Agreement, dated as of March 15, 1997, (2) as amended and supplemented by a Supplemental Mortgage and Security Agreement, dated as of December 1, 2000, (3) as amended and supplemented by a Second Supplemental Mortgage and Security Agreement, dated 1, 2004, (4) as amended and supplemented by a Third Supplemental Mortgage and Security Agreement, dated as of December 1, 2005 and (5) Fourth Supplemental Mortgage and Security Agreement (with Power of Sale), dated as of December 1, 2012[1] (collectively, the "Mortgage/Security Agreement").

---

[1]      The Fourth Supplemental Mortgage and Security Agreement (with Power of Sale) was duly recorded in the Office of the County Clerk of Oklahoma County, Oklahoma, in Book RE12116, beginning at Page 400.  Copies of the Mortgage/Security Agreement, with all recording information, are available in the public record.

13.     The "Mortgaged Property," as defined in the Mortgage/Security Agreement and covered by the lien thereof, encompasses all assets (including all now-owned and after-acquired property) and all monies, income, revenues, profits and the like of Epworth Villa and its estate in this bankruptcy case.[2]

14.     The Notes were issued by Epworth Villa to OCFA to evidence loans made by OCFA to Epworth Villa from proceeds of the series of revenue bonds that remain outstanding, issued by OCFA under the (1) Bond Indenture, dated as of March 15, 1997, (2) as supplemented and amended by a Supplemental Bond Indenture, dated as of December 1, 2000, (3) Second Supplemental Bond Indenture, dated as of December 1, 2004, (4) Third Supplemental Bond Indenture, dated as of December 1, 2005, and (5) Fourth Supplemental Bond Indenture, dated as of December 1, 2012, entered into between OCFA and the Trustee [3] ( collectively, the "Indenture").

15.     Pursuant to the Indenture, funding of the loans evidenced by the Notes was received by OCFA through issuance of the following-described bonds (collectively, the "Bonds," and the holders thereof, the "Bondholders"):

---

[2]     The full description of the Mortgaged Property is stated in the Mortgage/Security Agreement, which is of public record.

[3]     The Fourth Supplemental Bond Indenture, naming BancFirst as successor trustee to J.P. Morgan Trust Company, National Association, was duly recorded in the Office of the County Clerk of Oklahoma County, Oklahoma, in Book RE12116, beginning at Page 517.  Copies of the Indenture, with all recording information, are available in the public record.

a.  Oklahoma County Finance Authority Revenue Bonds, Series 2004B (Epworth Villa Project) Extendable Rate Adjustable Securities$^{SM}$ (EXTRAS$^{SM}$), in the original principal amount of $5,040,000;

b.  Oklahoma County Finance Authority Revenue Bonds, Series 2005A (Epworth Villa Project), in the original principal amount of $11,460,000;

c.  Oklahoma County Finance Authority Revenue Bonds, Series 2005B (Epworth Villa Project) Extendable Rate Adjustable Securities$^{SM}$ (EXTRAS$^{SM}$), in the original principal amount of $2,00,000;

d.  Oklahoma County Finance Authority Revenue and Refunding Bonds (Epworth Villa Project) Series 2012A, in the aggregate principal amount of $72,765,000;

e.  Oklahoma County Finance Authority Revenue Bonds (Epworth Villa Project) Series 2012B Tax-Exempt Mandatory Paydown Securities-80$^{SM}$ (TEMPS-80$^{SM}$) in the aggregate principal amount of $2,605,000; and

f.  Oklahoma County Finance Authority Revenue Bonds (Epworth Villa Project) Series 2012C Tax-Exempt Mandatory Paydown Securities-50$^{SM}$ (TEMPS-50$^{SM}$) in the aggregate principal amount of $3,265,000.

16.  Pursuant to the Indenture, the lien of the Mortgage/Security Agreement in and to Mortgaged Property and additional collateral identified therein (including, without limitation, the Notes, the Mortgage/Security Agreement and all monies and

securities held from time-to-time by the Trustee) (collectively, the "Bond Collateral")[4] is held by the Trustee, in trust, to secure the obligations of the Authority to the Bondholders under the Bonds.  Such lien in and to the Bond Collateral is a first and prior lien, superior to the interests of all other creditors of Epworth Villa.

17.     As of the date of commencement of this case, the current, aggregate indebtedness of Epworth Villa to the Authority under the Notes is principal totaling $87,835,000, together with accrued interest of $1,379,012, and accruing interest and other charges (including reasonable fees and expenses of the Trustee) as provided under applicable agreements (collectively, the "Bond Debt"), including the Notes, the Mortgage/Security Agreement and the Indenture (collectively with other documents and agreements relating to the Bond Debt, use of the proceeds thereof and collateral therefor, the "Bond Documents").

18.     The value of the Bond Collateral exceeds the amount of the Bond Debt.  In order to protect the interests of the residents and all creditors, and to preserve the value of the Bond Collateral for the benefit of all constituencies in this case, it is necessary that Epworth Villa continue its operations, as well as its construction, renovation and expansion project, without interruption.

---

[4]     The full description of the Bond Collateral is stated in the Indenture, which is of public record.

19.     Presently, and during the pendency of this case, because all now-owned and after-acquired assets are included therein, a part of the Bond Collateral is, and will constitute, "cash collateral," as defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral").

20.     Epworth Villa seeks immediate authority to use Cash Collateral.  The Trustee as the holder of the first priority lien in and to the Bond Collateral, has consented to Epworth Villa's continued use of Cash Collateral on the terms set forth herein and in the proposed Cash Collateral Order (defined below).

21.     Immediate, continued  use of Cash Collateral  is required for Epworth Villa  to  continue protect the interests of its residents and to operate its business in order preserve and enhance the value of its assets as it moves forward with this chapter 11 case.

22.     Without immediate use of Cash Collateral, Epworth Villa, its bankruptcy estate, as well as its residents and other constituent parties in interest, will suffer immediate and irreparable harm.

23.     Accordingly, Epworth Villa submits that its continued use of Cash Collateral should be approved on an interim basis immediately, and on a final basis after notice and a hearing.

**Relief Requested**

24.     Epworth Villa respectfully requests that the Court approve its use of Cash Collateral and provide for adequate protection of the interest of the Trustee in and to the Bond Collateral, including Cash Collateral as may be used by Epworth Villa, pursuant to sections 361, 363(e)  and 507 of the Bankruptcy Code, on account, and to the extent, of any diminution in the value of its lien in and to Bond Collateral, whether or not such diminution in value results from the sale, lease or use of the Cash Collateral by Epworth Villa, or otherwise.

25.     Specifically, Epworth Villa requests the Court, upon approving its use of Cash Collateral, order the following as adequate protection:

(a)     An adequate protection lien shall be granted to OCFA and the Trustee, pursuant to Sections 361 and 363 of the Bankruptcy Code, effective and perfected as of the Petition Date and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or other agreements, in and to all assets of Epworth Villa's bankruptcy estate, whether now owned or after acquired, including but not limited to additional, replacement, continuing, valid, binding, enforceable, and automatically and properly perfected security interests in and liens (the "Replacement Liens") on (a) all collateral as set forth as collateral under the enforceable Bond Documents (collectively, the "Prepetition Collateral"), (b) all proceeds of the Prepetition Collateral and (c) all assets of Epworth Villa of the same nature and type as the Prepetition Collateral whether presently owned or hereafter acquired by

Epworth Villa, including without limitation the payments, provided by persons occupying the property of Epworth Villa (collectively, the "Postpetition Collateral"), provided, however, that the Postpetition Collateral shall not include the proceeds of any avoidance action brought pursuant to Section 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, and subject and subordinate only to the Carve-Out (defined below).

(b)     A super-priority claim shall be granted OCFA and the Trustee, constituting a super-priority administrative expense claim under section 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code, junior only to the Carve-Out.

(c)     All financial reports required under the Mortgage/Security Agreement and copies of all financial reports required to be filed with the Court or the Office of the United States Trustee shall be provided to OCFA and the Trustee.

(d)     Epworth Villa shall timely pay all principal and interest and other expenses and charges relating to the Bond Debt including but not limited to the legal reasonable fees and expenses of the Trustee as required by the Notes and other Bond Documents, and the automatic stay of section 362(a) of the Bankruptcy Code shall be deemed modified to allow OCFA and the Trustee to apply such payments and to pay all scheduled payments to the Bondholders as provided under the Indenture and the Bonds.

(e)     Epworth Villa shall continue to be bound by, and required to comply with, all obligations and covenants as provided in the Mortgage/Security Agreement (except any obligations or covenants for which default may occur because of the filing of this chapter 11 bankruptcy case); provided, however, an event of default shall occur in the event of any failure of Epworth Villa to perform such binding obligations and covenants,

or if Epworth Villa fails to perform fully any provision, term, or condition of the interim or final orders approving this Motion in a timely manner ("Event of Default").  Upon the occurrence of an Event of Default, the Trustee shall give notice to Epworth Villa describing the alleged Event of Default and stating that Epworth Villa's right to use Cash Collateral shall automatically terminate if Epworth Villa does not cure such Event of Default within five (5) business days. In the event Epworth Villa fails to cure such Event of Default within five (5) business days of the Trustee giving notice, Epworth Villa's rights to use Cash Collateral shall automatically terminate, and Epworth Villa shall not make further use of Cash Collateral without further order of the Court.

As used herein, "Carve-Out" shall mean and refer to the sum total of (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, and (ii) to the extent allowed by the Court, all accrued and unpaid fees, costs and expenses incurred by professional persons or firms retained by Epworth Villa pursuant to section 327, 328 or 363 of the Bankruptcy Code or any statutory committee appointed in

this case pursuant to section 1102 of the Bankruptcy Code; provided, however, the Carve-Out for fees of professional persons or firms retained by Epworth Villa or any statutory committee appointed shall together not exceed the sum of $250,000 absent agreement of the Trustee or further order of the Court.

26.    The Carve-Out is in a reasonable amount and ensures that assets remain for the payment of U.S. Trustee fees and professional fees of Epworth Villa and the creditors' committee notwithstanding the grant of adequate protection liens and claims.

27.    The limited stay modification provisions are, in Epworth Villa's business judgment, necessary and reasonable under the circumstances in order to assure the value of its estate is protected.

28.    Upon the foregoing, Epworth Villa requests the Court enter an the interim relief approving use of Cash Collateral and set a final hearing on this Motion (the "Interim Order").

## BASIS FOR RELIEF

### Use Cash Collateral with Adequate Protection Is Authorized

29.    Section 363(c)(2) of the Bankruptcy Code restricts a debtor's use of a secured creditor's cash collateral.  Specifically, that provision provides, in pertinent part, as follows:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> (A)    each entity that has an interest in such cash collateral consents; or

(B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363]. 11 U.S.C. § 363(c)(2).

30.     Further, Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as  is necessary to provide adequate protection of such interest." *Id.* § 363(e).

31.     Epworth Villa satisfied the requirements of subsections (c)(2) and (e) of Section 363 of the Bankruptcy Code and should be authorized to use Cash Collateral. Subject to provision of adequate protection, the Trustee has consented to the use of Cash Collateral.  Accordingly, the Court should authorize Epworth Villa to use Cash Collateral under Section 363(c)(2) of the Bankruptcy Code.

<u>Immediate Use of Cash Collateral Is Required</u>

32.     The Court may grant interim relief in respect of a motion filed pursuant  to Section 363(c) of the Bankruptcy Code where, as here, interim relief is "necessary  to avoid  immediate  and  irreparable  harm  to  the  estate  pending  a  final hearing." Bankruptcy Rule 4001(b)(2).

33.     Epworth  Villa  and  its  estate  will  suffer  immediate  and  irreparable harm  if  the interim relief requested herein is not granted promptly after the Petition Date.  Epworth Villa have insufficient cash to fund operations without immediate use of Cash Collateral.

34.     Accordingly, Epworth Villa has an immediate need to use Cash Collateral on an interim basis to continue the operation of its business, maintain its facilities and meet the needs of Residents, and to meet payroll, all of which is required to preserve and maintain the value of Epworth Villa's assets for the benefit of all parties in interest.

35.     Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to the Epworth Villa' estates and is consistent with, and warranted under, subsections (b)(2) of Bankruptcy Rule 4001.

## REQUEST FOR FINAL HEARING

36.     Pursuant to of Bankruptcy Rule 4001(b)(2), Epworth Villa requests that the Court set a date that is no longer than thirty (30) days from the entry of the Interim Order as a final hearing for consideration of entry of the Final Order.

37.     Epworth Villa requests that it be authorized to serve a copy of the Interim Order, as may be entered by the Court, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed below and on such other parties in interest as directed therein.  Epworth Villa further requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

## REQUEST FOR WAIVER OF STAY

38.    Epworth Villa further seeks a waiver of any stay of the effectiveness of the Interim Order on this motion.   Pursuant to Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the use of Cash Collateral is essential to prevent irreparable damage to Epworth Villa's operations, value and ability to reorganize.   Accordingly, Epworth Villa submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

39.    Notice of this Application is being provided by overnight delivery to: (i) the Office of the United States Trustee; (ii) Oklahoma County Finance Authority; (iii) BancFirst, Trustee; (iv) the twenty largest unsecured creditors in this case; (v) Epworth Living, Inc.; (vi) the holders of, and counsel for the holders of, the Judgment described above; (vii) the Internal Revenue Service; and (viii) the Oklahoma Tax Commission. In light of the expedited nature of the relief requested herein and the irreparable harm to Epworth Villa that may ensue if the relief requested is not granted, Epworth Villa submits that no further notice need be given and that the notice provided by Epworth Villa  is sufficient.

## CONCLUSION

Epworth Villa respectfully request that the Court (i) enter the Interim Order; (ii) set a final hearing on this Motion; and (iii) grant such further relief to which Epworth Villa may be entitled.

DATED this 18th day of July, 2014.

Respectfully submitted,

*/s/ G. Blaine Schwabe, III*

G. Blaine Schwabe, III, OBA #8001
GableGotwals
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7101
Telephone: 405.235.5589
Facsimile: 405.235.2875
gschwabe@gablelaw.com

*/s/ Sidney K. Swinson*

Sidney K. Swinson, OBA #8804
Mark D.G. Sanders, OBA #22922
Brandon C. Bickle, OBA #22064
GableGotwals
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103
Telephone: 918.595.4800
Facsimile: 918.595.4990
sswinson@gablelaw.com
msanders@gablelaw.com
bbickle@gablelaw.com

*Proposed Attorneys for the Debtor in Possession*