## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:

Central Oklahoma United Methodist
  Retirement Facility, Inc.
  d/b/a Epworth Villa,

            Debtor.

Case No. 14-12995-TRC

Chapter 11

## SECOND MODIFIED PLAN OF REORGANIZATION
(With Technical and Clarifying Revisions, Dated October 29 and December 8, 2015)

Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa, as debtor herein ("Epworth Villa"), hereby proposes this *Second Modified Plan of Reorganization* ("Plan") for the resolution of all outstanding Claims against, and Interests in, Epworth Villa.

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

**1.01**  **Rules of Interpretation.**  For purposes of this Plan:

(a)  wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter;

(b)  all article, section, or exhibit references in the Plan are to the respective article of, section in, schedule to, or exhibit to the Plan, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof;

(c)  all references to dollars are to the lawful currency of the United States of America;

(d)  if the Plan's description of the terms of an exhibit is inconsistent with the terms of the exhibit, the terms of the exhibit shall control;

(e)  captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and

(f)  the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with any other provision in this Section.

{S319942;9}

       **1.02**    **Computation of Time.**    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

       **1.03**    **Governing Law.**    Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of law thereof.

       **1.04.**    **Definitions.**    Certain capitalized terms used in this Plan are defined in this Section.  Other capitalized terms are defined within the body of other Sections of the Plan.  Any capitalized terms found in this Plan, and not otherwise defined herein, shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules (and shall be construed in accordance with the rules of construction thereunder).

       The following terms shall have the respective meanings set forth below:

       **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including (without limitation) (i) the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Epworth Villa, such as wages, salaries or commissions for services, compensation for legal, management, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; (ii) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code; and (iii) the value of goods received by Epworth Villa in the ordinary course of business within the 20 days prior to the Petition Date, as provided for in Section 503(b)(9) of the Bankruptcy Code.

       **"Allowed"** means --

       (1)    that portion of any Claim or Interest, *other than an Administrative Claim*, (a) for which no timely proof of Claim or Interest has been Filed, but which has been listed by Epworth Villa in the Schedules in a liquidated, non-contingent and undisputed amount, or (b) as to which a proof of Claim or Interest has been timely Filed in a liquidated amount, so long as (x) no timely objection to the allowance of such Claim or Interest has been Filed, or (y) if such objection has been Filed, such objection has been overruled by a Final Order (but only to the extent such objection has been overruled), and/or (c) as to which a Final Order has been entered allowing such Claim or Interest;

       (2)    with regard to an Ordinary Course Administrative Claim, that portion of the subject Claim that Epworth Villa, in its fiduciary capacity as Debtor-in-Possession, has determined, as evidenced by payment, is a valid post-Petition Date obligation; and

       (3)    with regard to an Administrative Claim other than an Ordinary Course Administrative Claim, that portion of the subject Claim that is awarded to the Holder as an administrative expense claim by Final Order of the Court.

{S319942;9}

**"Authority"** means the Oklahoma County Finance Authority, an Oklahoma Public Trust.

**"Bankruptcy Code"** means Title 11 of the United States Code, as applicable to this Chapter 11 Case.

**"Bankruptcy Rules"** means, collectively, (i) the Federal Rules of Bankruptcy Procedure, as amended, promulgated under the authority of 28 U.S.C. § 2015, and (ii) the Local Rules of the Court, as applicable in this Chapter 11 Case.

**"Bar Date"** means the applicable deadline for Filing proofs of Claim or Interest against Epworth Villa that is established by a Claims Order or other Court Order.

**"Bond Indenture"** means the Bond Indenture, by and between the Authority and the Indenture Trustee dated as of March 15, 1997, as amended and supplemented by the Supplemental Bond Indenture dated as of December 1, 2000, as amended and supplemented by the Second Supplemental Bond Indenture dated December 1, 2004, as amended and supplemented by the Third Supplemental Bond Indenture dated as of December 1, 2005, and as amended and supplemented by the Fourth Supplemental Bond Indenture as of December 1, 2012, and as it may from time to time be further amended or supplemented pursuant to Article IX of the original Bond Indenture.

**"Bond Mortgage"** means the Mortgage and Security Agreement, by and between Epworth Villa and the Authority dated as of March 15, 1997, as amended and supplemented by the Supplemental Mortgage and Security Agreement dated as of December 1, 2000, as amended and supplemented by the Second Supplemental Mortgage and Security Agreement dated as of December 1, 2004, as amended and supplemented by the Third Supplemental Mortgage and Security Agreement dated as of December 1, 2005, as amended and supplemented by the Fourth Supplemental Mortgage and Security Agreement (with Power of Sale) dated as of December 1, 2012 , and as it may from time to time be further amended or supplemented pursuant to Article XII of the original Bond Mortgage.

**"Cash"** means legal tender of the United States of America and equivalents thereof.

**"Chapter 11 Case"** means the instant bankruptcy case commenced under Chapter 11 of the Bankruptcy Code by Epworth Villa on the Petition Date, styled *In re Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa*, Case No. 14-12995-TRC, and currently pending before the Court.

**"Claim"** means a claim against Epworth Villa, as described in Section 101(5) of the Bankruptcy Code, whether or not asserted in this Chapter 11 Case.

**"Claims Order"** means the Order of the Court establishing, *inter alia*, the Bar Date for Filing proofs of Claim or Interest (Doc. No. 193).

"**Class**" means a distinct and separate category of Claims as delineated in Article IV of this Plan.

"**Confirmation**" means the act of approval of this Plan by the Court under Bankruptcy Code Section 1129 following the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Court enters the Confirmation Order on its docket within the meaning of Bankruptcy Rules 5003(a) and 9021.

"**Confirmation Hearing**" means the hearing to consider Confirmation of this Plan pursuant to Section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the Order of the Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

"**Contested Claim**" means a Claim, (i) to the extent that Epworth Villa or any other party in interest has legitimately interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; (ii) that is Scheduled as disputed, contingent, or (unliquidated, and has not been Allowed by Final Order; or (iii) that is Scheduled as disputed, contingent, or unliquidated; or (iii) for which the objection deadline (*e.g.,* that provided in Section 7.05 of this Plan) has not yet expired.

"**Court**" means the United States Bankruptcy Court for the Western District of Oklahoma, to the extent it may exercise jurisdiction in this Chapter 11 Case on reference from the United States District Court for the Western District of Oklahoma; and otherwise, the United States District Court for the Western District of Oklahoma; or if either such Court ceases to exercise jurisdiction over this Chapter 11 Case, such other court that exercises jurisdiction over this Chapter 11 Case.

"**Debtor-in-Possession**" means Epworth Villa in its capacity as debtor-in-possession in this Chapter 11 Case pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

"**Disclosure Statement**" means the *Disclosure Statement to Accompany Debtor's Second Modified Plan of Reorganization*, relating to this Plan, and Filed simultaneously herewith, as it may be amended, modified or supplemented.

"**Disclosure Statement Hearing**" means the hearing to consider approval of the Disclosure Statement as required by Section 1125(b) of the Bankruptcy Code.

"**Distribution Date**" means, with respect to a given Claim, the date fifteen (15) days following the later of (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Claim.

"**Effective Date**" means the date that is fifteen (15) days following the Confirmation Date.

"**Entity**" means an entity as defined by Section 101(15) of the Bankruptcy Code.

{S319942;9}

"**Estate**" means the bankruptcy estate created with respect to Epworth Villa in its Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code, and includes, without limitation, the Facility.

"**Estate Claims**" means (a) any and all transfer avoidance and recovery actions arising under Chapter 5 of the Bankruptcy Code; and (b) those certain claims, rights, causes of action, suits or proceedings, whether in law or in equity, whether known or unknown, assertable by Epworth Villa against third parties in connection with the subject matter of the Oklahoma County Action, or conduct or circumstances relating to, or arising through the course of, the Oklahoma County Action, from the time thereof through the time of the conclusion of the Oklahoma County Action (regardless of when such conduct or circumstances occurred or may occur, and whether or not before commencement of the Oklahoma Action, or commencement or closing of this Chapter 11 case), *consisting of, and limited to*: (i) all those for professional negligence, misfeasance or malfeasance against the law firms of Conner & Winters, Holden & Carr, and/or Godwin Lewis and their respective insurance carriers; and (ii) all those for bad faith or other refusal to pay or take responsibility for claims or losses under policy(ies) of insurance, against Epworth Villa's liability insurance carrier(s), Homeland Insurance Company of New York, OneBeacon Professional Insurance, and/or OneBeacon Insurance Group; together with all recoveries and other proceeds of the foregoing.  The appellate proceedings relating to the Oklahoma County Action, and Epworth Villa's rights to prosecute its appeal of the Hicks' Judgment, are not Estate Claims, and Epworth Villa will retain complete control of prosecution of its appeal of the Judgment.

"**Estimated Claim**" means a Claim in the amount estimated by the Court under the authority of this Plan or Section 502(c) of the Bankruptcy Code.

"**Facility**" means the real estate described in the Bond Indenture and the buildings, improvements and fixtures (excluding equipment which is not fixtures and which may be removed without damage to the real estate) constructed or to be constructed on such real estate and all substitutions therefor, additions thereto and replacements thereof, commonly known as Epworth Villa, Oklahoma City, Oklahoma.

"**File, Filed or Filing**" refers to the act of submitting a paper to the clerk of the Court in this Chapter 11 Case, and acceptance and retention thereof by said clerk in the Court's files.

"**Final Order**" means an Order or judgment of the Court (a) as to which the time to appeal, petition for certiorari, or move for re-argument, rehearing or new trial has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument, rehearing or new trial shall then be pending; (b) as to which any right to appeal, petition for certiorari, reargue, rehear or retry shall have been waived in writing; or (c) in the event that an appeal, writ of certiorari, re-argument, rehearing or new trial has been sought, as to which (i) such Order of the Court shall have been affirmed by the highest court to which such Order was appealed; (ii) certiorari has been denied as to such Order; or (iii) re-argument or rehearing or new trial from such Order shall have been

- 5 -

denied, and the time to take any further appeal, petition for certiorari or move for re-argument, rehearing or new trial shall have expired without such actions have been taken.

"**Hicks**" means collectively or individually, as the context may require or suggest (a) William Hicks; and (b) Virginia Hicks Estate.

"**Holder**" means the Entity holding legal title to a Claim or Interest under this Plan, or a beneficial interest in the Litigation Trust.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Indenture Trustee**" means BancFirst, Oklahoma City, Oklahoma, in its capacity as the trustee under the Bond Indenture.

"**IRS**" means the Internal Revenue Service, an agency of the United States Department of Treasury.

"**Interest**" means, as the term is utilized in chapter 11 of the Bankruptcy Code, an "interest" in Epworth Villa as of the Petition Date.

"**Litigation Trust**" means an Oklahoma trust, to be known as the "Epworth Villa Litigation Trust", to be established as provided under Article VI of this Plan in accordance with the Litigation Trust Agreement to administer and distribute the Litigation Trust Assets.

"**Litigation Trust Agreement**" means the trust agreement attached hereto as Exhibit "A".

"**Litigation Trust Assets**" means, collectively:

(1)    Cash in the amount of $1,000,000; and

(2)    the Estate Claims, together with all recoveries and other proceeds thereof.

"**Litigation Trustee**" means the person, selected and serving in such capacity in accordance with the Litigation Trust Agreement; and who shall thereby be the duly appointed representative of Epworth Villa's Estate pursuant to Sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code.

"**Oklahoma County Action**" means Case No. CJ-2011-8387, in the District Court of Oklahoma County, State of Oklahoma:  William Hicks, individually and as Guardian Ad Litem for Virginia Hicks v. Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa Health Services and appellate proceedings related thereto.

"**Ordinary Course Administrative Claim**" means an Administrative Claim incurred in the ordinary course of business of Epworth Villa, as Debtor-in-Possession,

- 6 -

including, without limitation, (a) Claims for deposit refunds, and other obligations arising under Residency Agreements that have been assumed during this Chapter 11 Case; and (b) Claims arising under 28 U.S.C. § 1930.

"**Order**" means an order or judgment of the Court as entered on the Court's docket.

"**Oversight Committee**" means, for purposes of the Litigation Trust, a committee consisting of the Holders of the two (2) largest Allowed or Estimated Plan Class 6 Claims, and after satisfaction of all Class 6 Claims, the Holders of the two (2) largest Allowed or Estimated Plan Class 4 Claims, willing to serve. Each member of the Oversight Committee shall have one vote for each dollar of its Allowed/Estimated Claim. All decisions by the Oversight Committee shall be made by majority of the votes cast by members of the Committee.

"**Petition Date**" means July 18, 2014 -- the date on which Epworth Villa Filed its voluntary petition for relief commencing this Chapter 11 Case.

"**Plan**" means this Plan of Reorganization, together with all exhibits, schedules, supplements or other attachments annexed hereto.

"**Priority Claims**" means all Claims entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Claims or Tax Claims.

"**Pro Rata Share**" means the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class for which an allocation is being determined.

"**Reinstate**" means, notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) to cure any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code Section 365(b)(2) or of a kind that Bankruptcy Code Section 365(b)(2) expressly does not require to be cured, (ii) to reinstate the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before any such default, (iii) to compensate the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, (iv) if such Claim arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to Bankruptcy Code Section 365(b)(1)(A), to compensate the Holder of such Claim (other than Epworth Villa or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure, and (v) to not otherwise alter the legal, equitable, or contractual rights to which such Claim entitles the Holder.

"**Rejection Claims**" means the Claims arising from Epworth Villa's rejection of any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code.

"**Reorganized Debtor**" means Epworth Villa on and after the Effective Date.

"**Residency Agreement(s)**" means any written agreement or contract, as amended from time to time between Epworth Villa and a resident or potential resident of the independent living units in the Facility giving the resident or potential resident (a) certain rights of occupancy in the independent living units in the Facility, including any reservation agreement or other agreement or contract reserving rights of occupancy; (b) providing for certain services to such resident; and/or (c) establishing and delineating certain deposit refund rights.

"**Scheduled**" means as set forth on the Schedules.

"**Schedules**" means, collectively, and as amended, the schedules of assets and liabilities, and the statements of financial affairs Filed by Epworth Villa in this Chapter 11 Case pursuant to Section 521 of the Bankruptcy Code and the Bankruptcy Rules.

"**Tax Claim**" means a Claim amount entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"**Tax Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Unimpaired**" means, with reference to a Class of Claims or Interests, that the Class is not Impaired.

"**Virginia Hicks Estate**" means (a) William D. Hicks, as Personal Representative of the decedent's estate of Virginia Lee Hicks, (b) William Hicks as trustee of the William Dorn Hicks and Virginia Lee Hicks Revocable Trust, and/or (c) such other Entity as is lawfully invested with the Claims formerly held by Virginia Lee Hicks against Epworth Villa, which Claims have heretofore been asserted by William Hicks as Guardian Ad Litem for Virginia Hicks.

"**William Hicks**" means Mr. William Hicks, individually.

## ARTICLE II

### UNCLASSIFIED CLAIMS

**2.01    Non-Classification.** In accordance with Sections 1123(a)(1), 507(a)(2) and 507(a)(8) of the Bankruptcy Code, Administrative Claims and Tax Claims have not been classified in this Plan.

**2.02    Treatment.**

(a)    Administrative Claims. Unless otherwise agreed to by the parties, each Holder of an Allowed Administrative Claim (i) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, not later than the Distribution Date; and (ii) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in the ordinary course of business, in accordance with the terms of any agreement between Epworth Villa and such

- 8 -

Holder, including, without limitation, the Residency Agreements,[1] or as may be due and owing under applicable non-bankruptcy law.

(b)     Tax Claims.  Except to the extent that a Holder of an Allowed Tax Claim agrees to different treatment, each Holder thereof shall receive Cash in the full amount of the Claim on the Distribution Date.

**2.03     Deadline for Prosecuting Administrative Claims.**

(a)     Pre-Confirmation Date Administrative Claims.  All applications for allowance and payment of Administrative Claims (other than Ordinary Course Administrative Claims) allegedly incurred by Epworth Villa on or before the Effective Date shall be Filed no later than 30 days after the Effective Date.  Tax Claims are subject to the Bar Date for the Claims of governmental units.

(b)     Effect of Failure to File Timely Administrative Claim.  Any Holders of Administrative Claims (other than Ordinary Course Administrative Claims) who do not File a request for allowance and payment of such Claims within 30 days after the Effective Date shall be forever barred from asserting such Claims against Epworth Villa, the Reorganized Debtor, and/or any property of the same.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.01     Classification Scheme.**  For all purposes under this Plan, the classification of the Claims and Interests shall be as described below.

| | | |
|---|---|---|
| **Class 1** | **Priority Claims.**  Class 1 is a Class consisting of all Priority Claims. | |
| **Class 2** | **Indenture Claim.**    Class 2 is a Class consisting of the Claim of the Indenture Trustee under the Bond Indenture. | |
| **Class 3** | **Other Secured Claims.**    Class 3 is a Class consisting of all secured Claims other than that of the Indenture Trustee.  Holders of Other Secured | |

---

[1] The following Claims:

(a) those stated in Proof of Claim No. 14 (Alexander); Proof of Claim No. 50 (Kriegel); Proof of Claim No. 66 (Tuttle); Proof of Claim No. 63 (Woods); and Proof of Claim No. 69 (Cooper); and

(b) those Scheduled by Epworth Villa for the following:  Pat Coker/Sandra Nelson; Darvis Craig/Ron Craig; Lowell Netherton/Bonnie Matchinson; Tom Partney/Karen Erwin; Philip and Moria Reed/Ruth Carrie Reed; Cindy Smith; and John Underwood/Gary Underwood;

are deposit refund claims under Residency Agreements that have been assumed during this Chapter 11 Case, and shall be paid under the terms of this Section in accordance with, and to the extent payable under, the provisions of the applicable Residency Agreement.  Such Claims will not be treated in the manner provided under this Plan for any Class of Claims, and such Scheduling and Proofs of Claim shall be expunged by the Confirmation of this Plan.

{S319942;9}

Claims include, without limitation, the following: Ford Motor Credit Company LLC and GE Capital Information Technology Solutions Inc.[2]

**Class 4**    **Insured Claims.** Class 4 is a Class of all unsecured Claims (other than Claims in Classes 5 and 6) which arise from or relate to alleged conduct or circumstances occurring or existing prior to the Effective Date where a policy of indemnity insurance provides coverage. Holders of Insured Claims include, without limitation, the following: (a) Leroy and Betty Bryan; (b) Lisa Adams as next of kin of Helene Wilson and as personal representative of the Estate of Helene Wilson, Jeff Wilson as next of kin of Helene Wilson, and Kristen Nicastro as next of kin of Helene Wilson; (c) Frances Colleen Mashburn; (d) John Occhipinti as personal representative and next of kin of Jimmie Lee Occhipinti and Kathryn Ocariz, Susan McMillian, and James Occipinti, next of kin of Jimmie Lee Occhipinti; and (e) Virginia Hicks Estate.[3]

**Class 5**    **Hicks Contract Claims.** Class 5 is a Class consisting solely of the Claims of Hicks for such portion of the judgment entered in the Oklahoma Action as is denominated, and attributable to, claims against Epworth Villa for breach of Hicks' Residency Agreement.

**Class 6**    **Hicks Other Claims.** Class 6 is a Class consisting of all Claims of Hicks other than Class 4 and 5 Claims.

**Class 7**    **General Unsecured Claims.** Class 7 is a Class consisting of all Claims that are not Administrative Claims, Tax Claims, Priority Claims, the Indenture Claim, Other Secured Claims, Insured Claims, Hicks Contract Claims, or Hicks Other Claims.

**Class 8**    **Interests.** Class 8 consists of all Interests.

---

[2] The Claim of Grooms Irrigation Company was compromised as provided in the *Order Approving and Authorizing Grooms Compromise*, Filed November 10, 2015 (Doc. # 546), and is no longer a Class 3 Claim.

[3] The following claims are subject to compromises approved by the Court:

1. Paul and Sarah Savage – settled by insurance carrier after mediation.

2. Rosa Chavira – *see Order Approving and Authorizing Compromise with Rosa Chavira*, Filed November 25, 2015 (Doc. #563).

3. Estate of Julia Hamilton – *see Order Approving Settlement of State Court Litigation*, Filed March 18, 2015 (Doc. #284)

4. Accord Construction, Inc. – *see Stipulation and Agreed Order on Epworth Villa's Objection to Claim No. 70 and Response*, Filed November 18, 2015 (Doc.#555).

Treatment of those Claims, which are no longer Class 4 Claims, will be governed by the Court-approved compromises.

{S319942;9}

## ARTICLE IV

### TREATMENT AND STATUS OF CLASSES UNDER THE PLAN

**4.01    Class 1          Priority Claims.**

(a)      Treatment.      To the extent that Allowed Class 1 Claims have not been paid in full in the ordinary course of business during the pendency of this Chapter 11 Case, they shall be paid in Cash, in full, without post-Petition Date interest.  Holders of Class 1 Claims shall receive no other consideration under this Plan on account of such Claims.

(b)      Impairment and Voting.  Class 1 is impaired by the Plan.  Holders of Allowed or Estimated Claims in Class 1 are entitled to vote to accept or reject the Plan.

**4.02    Class 2          Indenture Claim.**

(a)      Treatment.      The legal, equitable, and contractual rights to which the Indenture Claim entitles the Holder thereof shall not be altered by this Plan, and shall continue to be governed by the underlying and operative credit facility documents, except that as of the Effective Date, the Indenture Trustee shall be deemed to have (i) waived any default under such documents arising from the pendency of and/or entry of judgment in the Oklahoma County Action or from the filing of Epworth Villa's bankruptcy case; (ii) amended the requirements in such documents of the number of days' cash on hand Debtor is required to maintain to reduce the number from 180 days to 150 days for a period of one year from the Effective Date with an extension of one additional year upon reasonable request of Epworth Villa, provided that at the end of such periods, the existing provision for maintaining 180 days cash on hand shall be reinstated; and (iii)  released the lien, if any, of the Bond Indenture in and to the Cash and other assets of Epworth Villa and its Estate as, and only to the extent, required to fulfill the Plan's payment, transfer, and/or other treatment obligations to other Holders entitled to receive distributions as provided in the Plan.  The Holder of the Class 2 Claim shall receive no other consideration under this Plan on account of such Claim.

(b)      Impairment and Voting.  Class 2 is impaired by the Plan.  The Holder of the Allowed or Estimated Claim in Class 2 is entitled to vote to accept or reject the Plan.

**4.03    Class 3          Other Secured Claims.**

(a)      Treatment.      With respect to each Allowed Other Secured Claim, Epworth Villa shall, at the its option:  (i) Reinstate the obligation(s) underlying such Claim; or (ii) satisfy such Claim by surrender of the collateral securing such Claim.  Holders of Class 3 Claims shall receive no other consideration under this Plan on account of such Claims.

(b)      Impairment and Voting.  Class 3 is not impaired by the Plan.  The Holder(s) of the Allowed or Estimated Claim(s) in Class 3 is/are not entitled to vote to accept or reject the Plan.

**4.04    Class 4          Insured Claims.**

{S319942;9}

(a)    <u>Treatment</u>.    As of the Effective Date, the automatic stay and/or discharge injunction of Sections 362 and/or 524(a) of the Bankruptcy Code shall be deemed modified, as necessary, to permit each Holder of a Claim in Class 4 to (i) seek liquidation of such Claim by final judgment of a court of competent jurisdiction, or otherwise, and (ii) collect and satisfy such Claim from an issuer of a policy of indemnity insurance that provides coverage for the Claim. Any balance of Class 4 Claims not covered by indemnity insurance, after full satisfaction of the Class 6 Claims and before any distribution to Epworth Villa, will receive a Pro Rata Share of the beneficial interests in the Litigation Trust.    Holders of Class 4 Claims shall receive no other consideration under this Plan on account of such Claims.

(b)    <u>Impairment and Voting</u>.    Class 4 is impaired by the Plan.    The Holders of Allowed or Estimated Claims in Class 4 are entitled to vote to accept or reject the Plan.

### 4.05   <u>Class 5</u>          <u>Hicks Contract Claims</u>.

(a)    <u>Treatment</u>.    Epworth Villa shall provide, and ensure that its contractors provide, all continuing care and services that are provided in any Residency Agreement between Hicks and Epworth Villa, whether in effect now or entered in the future, at no cost to Hicks for so long as William Hicks continues to reside at the Facility or related facilities in Oklahoma City, Oklahoma; *provided, however*, in the event William Hicks decides to move out of the Facility, Epworth Villa will promptly refund to him the entire entrance fee deposit of $127,000 without condition.    The Holders of the Class 5 Claims shall receive no other consideration under this Plan on account of such Claims.

(b)    <u>Impairment and Voting</u>.    Class 5 is impaired by the Plan.    The Holders of the Claims in Class 5 are entitled to vote to accept or reject the Plan.

### 4.06   <u>Class 6</u>          <u>Hicks Other Claims</u>.

(a)    <u>Treatment</u>.    Each of the Holders of Allowed Claims in Class 6 shall receive, in full and final satisfaction of their Allowed Claims,[4] a Pro Rata Share of the beneficial interests in the Litigation Trust.    The Holders of Class 6 Claims shall receive no other consideration under this Plan on account of such Claims.    The Allowed Amount of the Class 6 Claims arising from the Judgment in favor of the Hicks shall be subject to determination by final, non-appealable judgment of the trial or appellate court in the Oklahoma County Action.    Epworth Villa will prosecute its appeal of the Judgment to its conclusion. Notwithstanding anything to the contrary in the Plan, nothing shall preclude settlement of the Allowed Amount of the Class 6 Claims, provided that such settlement also resolves and releases the Estate Claims.

(b)    <u>Impairment and Voting</u>.    Class 6 is impaired by the Plan.    The Holders of Allowed or Estimated Claim in Class 6 are entitled to vote to accept or reject the Plan.

---

[4] The allowance of Class 6 Claims shall be for purposes of (a) participation in the Chapter 11 Case as a creditor (*e.g.,* voting upon the Plan), and (b) treatment pursuant to this Section, including distributions from the Litigation Trust.    Such allowance shall have no preclusive effect for any other purpose in any other forum.

4.07  **Class 7**  **General Unsecured Claims.**

(a)  Treatment.  In full and final satisfaction of its Claim, each Holder of an Allowed Claim in Class 7 shall be paid in Cash the Allowed or Estimated amount of its Claim, with post-Petition Date interest at the rate provided for in the relevant period by 28 U.S.C. §1961.  Holders of Class 7 Claims shall receive no other consideration under this Plan on account of such Claims.

(b)  Impairment and Voting.  Class 7 is not impaired by the Plan.  Holders of Allowed or Estimated Claims in Class 7 are not entitled to vote to accept or reject the Plan.

4.08  **Class 8**  **Interests.**

(a)  Treatment.  If any Class of Impaired Claims does not accept the Plan, then all Interests shall be cancelled and extinguished under the Plan and the Holder thereof shall neither retain nor receive any property on account of such Interests.  If all Classes of Impaired Claims accept the Plan, then the Class 8 Interest Holder shall retain its Interests.

(b)  Impairment and Voting.  Class 8 is impaired by the Plan.  The Holder of the Interests in Class 8 is entitled to vote on the Plan.

# ARTICLE V

## IMPLEMENTATION OF THE PLAN

**5.01  Prosecution of Appeal of Judgment.**  Epworth Villa will prosecute the appeal of the Judgment in the Oklahoma County Action to conclusion, including through *certiorari* to the Oklahoma Supreme Court.

**5.02  Plan Distributions and Treatment.**  The Plan shall be implemented in the following manner:

(a)  on the Distribution Date, from Cash on hand, the Reorganized Debtor shall (i) make all payments and other distributions then due under the terms of this Plan to Holders of Administrative Claims, Tax Claims, Priority Claims (Class 1), and General Unsecured Claims (Class 7); and (ii) be deemed to have made the assignment of beneficial interests in the Litigation Trust as is due to Holders of Claims in Class 6 and to the Holders of Claims in Class 4, to the extent provided under Section 6.02.

(b)  as and when due under the terms of the underlying credit agreements, the Reorganized Debtor shall make, and continue to make, all payments and other distributions due to Holders of the Indenture Claim (Class 2) and Other Secured Claims (Class 3) in accordance with their treatment under this Plan;

(c)  on or before the Effective Date, Epworth Villa shall complete the surrender of collateral, if so elected by it, as alternative treatment for the Holders of Other Secured Claims (Class 3);

{S319942;9}

(d)  on the Effective Date, the automatic stay and/or discharge injunction of Sections 362 and/or 524(a) of the Bankruptcy Code shall be deemed modified as provided in Section 4.04 hereof in favor of Holders of Insured Claims (Class 4);

(e)  on the Confirmation Date, the Litigation Trust shall be established for the benefit of all Holders of Hicks Other Claims (Class 6) and the Holders of Claims in Class 4, to the extent provided under Section 6.02; and

(f)  unless all other Impaired Classes have accepted the Plan, all Interests (Class 8) will be deemed cancelled and forfeited as of the Effective Date.

**5.03    Other Documents and Actions.**  The Reorganized Debtor may execute such documents and take such other action as is necessary to effectuate the treatment and transactions provided for in the Plan.

## ARTICLE VI

## LITIGATION TRUST

**6.01    Establishment of the Litigation Trust**   On the Confirmation Date, (a) the Oversight Committee shall be established; (b) the Litigation Trust will be created as an Oklahoma trust to administer and distribute the Litigation Trust Assets; and (c) Epworth Villa and the Litigation Trustee shall execute and deliver the Litigation Trust Agreement and take all other steps necessary to establish the Litigation Trust.[5]

**6.02    Purpose of the Litigation Trust**   The Litigation Trust shall be established for the sole purpose of liquidating the Litigation Trust Assets for the benefit of Holders of Claims in Class 6, and (after full satisfaction of the Class 6 Claims and before any distribution to Epworth Villa) for the benefit of the Holders of Class 4 Claims to the extent, if any, those claims are not covered by indemnity insurance ("Beneficiary/ies"), in accordance with Treasury Regulation § 301.7701-4(d), with no objective to engage or continue in the conduct of a trade or business.

**6.03    Litigation Trustee**   The Litigation Trustee shall commence serving in such fiduciary capacity on the Confirmation Date.   The Litigation Trustee shall have the responsibilities set forth in the Litigation Trust Agreement, including, without limitation, the liquidation of the Estate Claims and distribution of the proceeds of the Litigation Trust Assets to the Beneficiaries.   The Litigation Trustee's exercise of duties and powers under the Litigation Trust is subject to the supervisory power of an Oversight Committee (as described in the Litigation Trust Agreement).

**6.04    Litigation Trust Assets**   On the Confirmation Date, the Estate Claims component of the Litigation Trust Assets shall be deemed vested in the Litigation Trust without further

---

[5] To the extent that there are any inconsistencies between this Article VI of the Plan and the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall control.

{S319942;9}

action or Order.  The Cash component of the Litigation Trust Assets shall be transferred from Epworth Villa to the Litigation Trust in the following installments: $500,000 shall be funded on the Distribution Date, and $500,000 shall be funded six (6) months thereafter.  The Litigation Trust shall be the successor-in-interest to Epworth Villa, and shall have full power and authority to act,[6] with respect to the Litigation Trust Assets, including, without limitation, the right and power to prosecute the Estate Claims just as if the Litigation Trustee was appointed as a trustee in the Chapter 11 Case.[7]

      **6.05**   **Deemed Retention**  The Estate Claims may be deemed retained by Epworth Villa and/or its Estate insofar, and in such manner, as necessary to preserve such claims under applicable law; and in that event, the *proceeds* of the Estate Claims so retained by Epworth Villa and/or the Estate shall be assigned, transferred and/or distributed to the Litigation Trust when and as available.

      **6.06**   **Distributions from the Litigation Trust**  The Litigation Trustee shall make, or shall designate an Entity to make, distributions to the Beneficiaries within his/her discretion, subject to the following:  (a) mandatory distributions prescribed by the Litigation Trust Agreement Section 3.4(a); and (b) re-vesting in and distribution of surplus to Epworth Villa in accordance with Litigation Trust Agreement Section 3.4(e).  Epworth Villa holds the residual beneficial interest, after payment of Class 6 Claims and expenses in full and, thereafter, payment of any balance of Class 4 Claims not covered by indemnity insurance, as provided under Section 6.02, in all recoveries by the Litigation Trust.

      **6.07**   **Termination of the Litigation Trust**  The Litigation Trust shall terminate, under the terms of the Trust Agreement, and without any further action by the Litigation Trustee, on the date that is ninety (90) days following the Litigation Trustee's tender of a final distribution to Beneficiaries.

      **6.08**   **Exculpation**  Confirmation of this Plan shall constitute an exculpation of the Litigation Trustee and Oversight Committee members (as described in the Litigation Trust Agreement) by all Beneficiaries from any and all claims, causes of action and other assertions of liability to the extent provided for in the Litigation Trust Agreement.

---

[6] To the extent, if any, necessary to permit prosecution of all Estate Claims by the Litigation Trustee, the automatic stay of Bankruptcy Code Section 362 shall be deemed so modified on the Confirmation Date for the sole purpose of allowing the Litigation Trustee to pursue all of the Estate Claims assigned to the Litigation Trust and to take all actions permitted by the Litigation Trust Agreement.

[7] The actual or deemed transfer of property from Epworth Villa to the Litigation Trust shall be treated for all purposes of the Tax Code as a transfer to the beneficiaries of the Litigation Trust, followed by a deemed transfer by the beneficiaries to the Trust.  The beneficiaries of the Litigation Trust shall be treated as the grantors and deemed owners of the Trust.  The Litigation Trustee shall file returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b).  The Litigation Trustee and the beneficiaries of the Litigation Trust shall value the property transferred to the Litigation Trust consistently, and such valuation shall be used for all federal income tax purposes.  Epworth Villa may request the Court to value the property transferred to the Litigation Trust at confirmation of the Plan.  The beneficiaries of the Litigation Trust shall be responsible for payment of any taxes due with respect to the operations of the Litigation Trust.

{S319942;9}

## ARTICLE VII

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

7.01    **Post-Petition Contracts and Leases**.   Executory contracts and/or unexpired leases entered into after the Petition Date will be performed by the Reorganized Debtor in the ordinary course of business.

7.02    **Assumption of Pre-Petition Executory Contracts and Unexpired Leases**. Epworth Villa shall assume, as of the Effective Date, to the extent permitted by applicable law, all pre-Petition Date executory contracts and unexpired leases that they designate in a *Notice of Intention to Assume* Filed on or before the date of the Disclosure Statement Hearing.

7.03    **Rejection of Pre-Petition Executory Contracts and Unexpired Leases**. Epworth Villa shall reject all pre-Petition Date executory contracts and unexpired leases that exist between Epworth Villa and any Entity, with the specific exception of any executory contract or unexpired lease (i) that is set forth in the *Notice of Intention to Assume* referred to in Section 7.02 hereof; (ii) that has been assumed pursuant to an Order of the Court entered prior to the Confirmation Date; (iii) that has, prior to the Confirmation Date, been deemed rejected by operation of Section 365 of the Bankruptcy Code or other applicable law; or (iv) as to which a motion for approval of the assumption of such executory contract or unexpired lease is pending on the Confirmation Date and such assumption is ultimately approved by Court.

7.04    **Approval of Assumption or Rejection of Contracts and Leases.**  Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of (i) the assumption of the executory contracts and unexpired leases rejected pursuant to Section 7.02 hereof, and (ii) the rejection of the executory contracts and unexpired leases rejected pursuant to Section 7.03 hereof.  Unless provided for otherwise in the Confirmation Order, confirmation of the Plan will constitute a determination that no defaults exist in the executory contracts and unexpired leases identified in the *Notice of Intention to Assume*.

7.05    **Rejection Claims.**  All Rejection Claims must be Filed with the Court before the earlier of (i) the time set by any Final Order rejecting an executory contract or unexpired lease or (ii) 30 days after the Confirmation Date.  Any Rejection Claims not filed within such time will be forever barred from assertion against Epworth Villa, the Reorganized Debtor, or the Estate. Objections to Rejection Claims must be Filed not later than 20 days of the Filing of such Claims. Unless otherwise ordered by the Court or provided in this Plan, all Rejection Claims shall be classified and treated as Claims in Class 7.

## ARTICLE VIII

## PROVISIONS FOR DETERMINATION OF CONTESTED CLAIMS AND
## INTERESTS AND DISTRIBUTIONS ON CLAIMS

{S319942;9}

8.01    <u>Assertion of Claims or Interests</u>.    The Claims Order has established a Bar Date for Holders of Claims against and/or Interests in Epworth Villa, other than the Holders of Administrative Claims and Rejection Claims, to File proofs of Claims or Interests.  Deadlines for Holders of Administrative Claims and Rejection Claims are established by Plan Sections 2.03 and 7.05, respectively.

8.02    <u>Objections to Claims or Interests</u>.

(a)    <u>Objections</u>.  Except as provided in Section 8.02(b) of this Plan, parties-in-interest may object to Claims and Interests.  The Court has not yet established a general deadline for objection to Claims or Interests; however, under the terms of this Plan objections filed on or after the Effective Date will be moot, as the nature and extent of the treatment of Claims and Interests will be fixed on the Effective Date.

The procedure for notice, objection, and opportunity for hearing with regard to requests of Allowance of Administrative Claims is governed by Local Bankruptcy Rule 9013-1.  The deadline for objections to Rejection Claims is stated in Plan Section 7.05.

(b)    <u>Class 6 Claims</u>.  Notwithstanding anything in this Plan or any event in the Chapter 11 Case to the contrary, the Claims classified in Class 6 hereof shall be deemed Allowed on the Confirmation Date in the amount of the proof(s) of claims filed in this Chapter 11 Case by the Holders thereof, despite any objection(s) thereto, subject only to the limitations stated in footnote 2 hereof (*see* Section 4.06(a)).  The deemed Claim allowance provided for in this subsection shall have no preclusive effect for any purpose in any other forum.

Notwithstanding the foregoing, on motion of the Litigation Trustee or Beneficiary, the Court may estimate a Claim for purposes of its Holder's participation in the administration of, or distributions from, the Litigation Trust.

(c)    <u>Setoffs</u>.  Epworth Villa may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever, including, without limitation, actions arising under chapter 5 of the Bankruptcy Code, and other claims and causes of action that Epworth Villa may have against the Holder thereof.  Neither the failure to set off against, nor the allowance of, any Claim hereunder shall constitute a waiver or release of the Holder of such Claim.

(d)    <u>Recoupment</u>.  In no event shall any Holder of a Claims be entitled to recoup any Claim against any right, claim or cause of action of Epworth Villa, the Reorganized Debtor, or Litigation Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to Epworth Villa on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

8.03    <u>Distribution Timing</u>.

(a)    <u>Monetary Distributions</u>.  The Cash to be distributed under the Plan to each Holder

of an Allowed Administrative Claim, Tax Claim, or Claim in Classes 1 and 7 shall be distributed to such Holder (i) on the Distribution Date; or (ii) if such Claim is not an Allowed Claim on such date, then, to the extent thereafter Allowed, as soon as practicable after the Order of the Court allowing the Claim becomes a Final Order.

(b)    <u>Beneficial Interest Distributions</u>.  On the Distribution Date, the beneficial interests to be distributed under the Plan to each Holder of a Claim in Class 6, and thereafter to each Holder of a Claim in Class 4, to the extent provided in Section 6.02, shall be deemed distributed to such Holder.

(c)    <u>Other Payments or Distributions</u>.  The Cash, if any, to be paid in accordance with the Plan to each Holder of an Allowed Claim in Classes 2 and/or 3 shall be distributed to such Holder (i) on the date(s) provided by this Plan; or (ii) if such Claim is not an Allowed Claim on such date(s), then, to the extent thereafter Allowed, as soon as practicable after the Order of the Court allowing the Claim becomes a Final Order.

**8.04    <u>Payments and Distributions on Contested Claims</u>.**

(a)    <u>No Distributions Pending Allowance</u>.    Notwithstanding any other provision hereof, no payment or other monetary distribution provided for under the Plan shall be made to the Holders of a Claim on account of that Claim unless and until, and only to the extent that, such Claim becomes an Allowed Claim.

(b)    <u>Contested Claims Reserve</u>.  Except as otherwise provided herein, from and after the Distribution Date, and until such time as a Contested Claim has been settled or determined by Final Order, the Reorganized Debtor shall reserve and hold any property otherwise distributable on account of each Contested Claim (together with any interest or other income attributable thereto) in escrow for the benefit of each Holder of a Contested Claim in an amount equal to distributions which would have been made to the Holder of such Contested Claim if it were an Allowed Claim.

(c)    <u>Distribution Mechanics</u>.  Any property reserved and held for the benefit of a Holder of a Contested Claim shall be treated as a payment and reduction on account of such Contested Claim for purposes of computing any additional amounts to be paid in Cash or other property in the event the Contested Claim ultimately becomes an Allowed Claim.  At such time as a Contested Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtor shall distribute to the Holder thereof the distributions, if any, to which such Holder is then entitled under the Plan, together with a Pro Rata Share of any interest or other income that may have been earned on the amount of Cash so reserved (net of any expenses, including any taxes on the escrow, relating thereto).  In the event, and to the extent, that Contested Claims are not Allowed, in whole or in part, the Holders of Allowed Claims in the same Class as the Holders of the Claims that are not Allowed shall receive their Pro Rata Share of any property reserved on account of the Claims that are not Allowed.

(d)    <u>Maintenance of Reserves</u>.  Reserved Cash, and any interest or income paid thereon, shall be either (i) held by the Reorganized Debtor in an interest-bearing account or (ii) invested in interest-bearing obligations issued by the United States Government and guaranteed

{S319942;9}

by the United States Government, and having (in either case) a maturity of not more than thirty (30) days, for the benefit of such Holders pending determination of their entitlement thereto under the terms of the Plan.

(f)     <u>Unclaimed Distributions</u>.    If any Holder of an Allowed Claim entitled to a distribution under the Plan cannot be located by the Reorganized Debtor, property distributable to such Holder shall be reserved and maintained as provided herein.  If such Holder is located within two years of the Distribution Date, such distributions shall be distributed to such Holder. If such Holder cannot be located within two years of the Distribution Date, any distributions otherwise due to such Holder shall be released from escrow and become the property of the Reorganized Debtor; provided however, that nothing contained in this Plan shall require the Reorganized Debtor to attempt to locate such Holder.

# ARTICLE IX

## ACCEPTANCE OR REJECTION OF THE PLAN

**9.01    Deemed Acceptance of the Plan.**    Classes 3 and 7 are not Impaired under the Plan and, therefore, are presumed to have accepted the Plan in accordance with Section 1126(f) of the Bankruptcy Code.  In addition, although Class 8 is Impaired, the Holder in such Class will not receive or retain any property under the Plan on account of its Interests, and thus is deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code.

**9.02    Voting Classes.**    As a consequence of Plan impairment and deemed acceptance or rejection, only Holders of Allowed or Estimated Claims in Classes 1, 2, 4, 5 and 6 shall be entitled to vote to accept or reject the Plan.

**9.03    Acceptance by Impaired Classes.**    An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voted in such Class have voted to accept the Plan *and* (ii) the Holders (other than those designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Interests actually voted in such Class have voted to accept the Plan.

**9.04    Non-Consensual Confirmation.**    In the event Classes 1, 2, 4, 5, 6 and 8 do not all accept the Plan, Epworth Villa shall, and does hereby, request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

# ARTICLE X

## EFFECTS OF PLAN CONFIRMATION

**10.01    Discharge.**

(a)     Upon confirmation of the Plan, except as otherwise expressly provided herein or in the Confirmation Order, Epworth Villa shall be discharged from debts that arose prior to the

- 19 -

{S319942;9}

Confirmation Date to the fullest extent permitted by section 1141(d) of the Bankruptcy Code.

(b)     Except as otherwise expressly provided in this Plan or the Confirmation Order, Confirmation of the Plan terminates all rights, powers and interests of Holders of Interests as of the Effective Date.

(c)     Upon the discharge of Epworth Villa, and except as provided in Section 4.04 of this Plan, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against Epworth Villa, Epworth Villa in Possession, or their respective successors or assigns, including, without limitation, the Reorganized Debtor, or their respective properties or interests in property, any Claim in connection with a discharged debt, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefor were known or existed prior to the Confirmation Date, regardless of whether a proof of claim was Filed, whether the Holder thereof voted to accept or reject the Plan, or whether the Claim is an Allowed Claim.

(d)     The Plan does not effect a release of any claim against any third parties, including Epworth Villa's officers and directors.

**10.02   Term of Injunctions or Stays.**  Unless otherwise provided herein, all injunctions or stays applicable in the Chapter 11 Case pursuant to Section 105 or 362 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date, shall remain in full force and effect until the latter of the Effective Date and the date provided for in any applicable Order or Bankruptcy Code provision.  In the case of the stay of Bankruptcy Code Section 362(a), such stay shall be supplanted by the discharge injunction of Section 524(a) of the Bankruptcy Code.

**10.03   Vesting of Assets in Reorganized Debtor.**  On the Effective Date, except as otherwise expressly provided in the Plan, the Reorganized Debtor shall be vested with all of the property of Epworth Villa's Estate free and clear of all Claims, liens, encumbrances, mortgages, charges and other interests of creditors, excepting only the mortgages, security interest and/or other liens of the Holders of Claims in Classes 2 and 3 of this Plan.  Epworth Villa shall continue as Debtor-in-Possession until the Effective Date.  Thereafter, the Reorganized Debtor may operate its businesses free of any restrictions imposed by the Bankruptcy Code except as specifically imposed by this Plan and/or the Confirmation Order.

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are expressly and specifically vested in the Litigation Trust in connection with the Plan, the Confirmation Order, any settlement agreement approved during the Chapter 11 Case, or  any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code:  (1) any and all rights, claims, causes of action, defenses, and counterclaims of or accruing to Epworth Villa or its Estate shall remain assets of and vest in the Reorganized Debtor, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document Filed with the Court, and (2) neither Epworth Villa nor the Reorganized Debtor shall be deemed to have waived, relinquished, or abandoned (nor are they estopped or otherwise precluded from

- 20 -

asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estate.  In its sole discretion, the Reorganized Debtor may commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims not then held by the Litigation Trust, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtor.

**10.04  Continued Corporate Existence.**  Epworth Villa, as the Reorganized Debtor, shall continue to exist after the Effective Date as a non-profit corporate entity without members or other Interest Holders; and shall possess all available corporate powers under the laws of the State of Oklahoma, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law.  The IRS has determined that Epworth Villa is qualified as an organization described in Section 501(c)(3) of the Tax Code; and such status is unaffected by this Plan.

**10.05  Modification of Organizational Documents.**  As a consequence of the treatment of Class 8 Interests under this Plan, the Certificate of Incorporation and By-Laws of Epworth Villa shall be amended and restated as necessary to implement the organizational changes effected by this Plan.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

**11.01  Modification of Plan.**  Epworth Villa reserves the sole right, in accordance with the Bankruptcy Code and Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, Epworth Villa and/or Reorganized Debtor may, upon order of the Court, amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**11.02  Withdrawal of Plan.**  Epworth Villa reserves the right, at any time prior to the entry of the Confirmation Order, to revoke and withdraw the Plan.  If Epworth Villa revokes or withdraws the Plan, or if entry of the Confirmation Order does not occur, then the Plan shall be deemed null and void.  In that event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims or causes of action by or against Epworth Villa, to prejudice in any manner the rights of Epworth Villa in any further proceedings, or constitute an admission against interest by Epworth Villa or any other party in interest.

**11.03  Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, each heir, executor, administrator, successor or assign of such Entity.

**11.04  Payment of Statutory Fees.**  All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid on or before the Distribution Date by Epworth Villa and thereafter by Reorganized Debtor.  Additionally, the Reorganized Debtor will prepare post-

{S319942;9}

Confirmation status reports and File the same with the Office of the United States Trustee until the Chapter 11 Case is closed.

**11.05   Notices.**  Any notice, request or demand given or made to Epworth Villa and/or the Reorganized Debtor under this Plan or under the Bankruptcy Code or the Bankruptcy Rules shall be in writing and shall be hand-delivered or sent by a reputable overnight courier, and shall be deemed given when received at the following addresses whether hand-delivered or sent by overnight courier service:

> John C. Harned
> President & Chief Executive Officer
> Epworth Villa
> 14901 N. Pennsylvania Ave.
> Oklahoma City, OK  73134

with copies to:

> G. Blaine Schwabe, III          -and-          Sidney K. Swinson
> Gable & Gotwals, P.C.                          Gable & Gotwals, P.C.
> One Leadership Square, 15th Floor              1100 ONEOK Plaza
> 211 North Robinson                             100 W. 5th Street
> Oklahoma City, OK  73102-7101                  Tulsa, OK  74103
> gschwabe@gablelaw.com                          sswinson@gablelaw.cm
> (405) 235-2875 (Fax)                           (918) 595-4828 (Fax)

Notwithstanding anything to the contrary provided herein, all notices concerning this Plan shall be served upon the entities prescribed, and in the manner prescribed, under the Bankruptcy Code and Bankruptcy Rule 3017.

**11.06   Severability of Plan Provisions.**  If, prior to entry of the Confirmation Order, any term or provision of the Plan that does not govern the treatment of Claims or the conditions to Confirmation or the Effective Date is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

**11.07   Professionals.**  Professional fees and expenses incurred from and after the Effective Date for Epworth Villa, the Estate and the Reorganized Debtor shall not be subject to the approval of the Court.  The retention of the professional persons of Epworth Villa shall terminate as of the Effective Date, and at such time such professional persons shall be entitled to File and prosecute their respective fee applications for final allowance of compensation and reimbursement of expenses.  Such final fee applications shall be Filed with the Court no later

- 22 -

than thirty (30) days after the Effective Date, unless such deadline is extended by order of the Court.

**11.08  Governing Law.**  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, other federal law, or agreements between the parties, are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Oklahoma, without giving effect to the principles of conflicts of law thereof.

**11.09  Withholdings.**  In connection with this Plan and transfers and distributions hereunder, Epworth Villa, the Reorganized Debtor, and the Litigation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.

**ARTICLE XII**
**RETENTION OF JURISDICTION**

Subject to the jurisdictional provisions of Title 28, the Court shall retain and possess exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, and/or that relates to the following subject matter:

(a)    entry and implementation of such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(b)    consideration of any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Court, including, without limitation, the Confirmation Order;

(c)    determination of any objections to proofs of claim and/or interests, estimation of any Claims, and/or other resolution of any Contested Claims;

(d)    determination of requests for allowance and/or payment of Administrative Claims, including, without limitation, requests for compensation of and reimbursement of expenses of professionals and other parties entitled thereto under sections 330, 331, and 503(b) of the Bankruptcy Code;

(e)    resolution of any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Epworth Villa is a party or with respect to which Epworth Villa may be liable, and to determine any Rejection Claims;

(f)    determination of any and all adversary proceedings and/or contested matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor or Litigation Trustee;

{S319942;9}

(g)      resolution of matters relating to determination and/or recovery of all assets of the Reorganized Debtor and property of the Estate, wherever located;

(h)      determination of the scope of the discharge of Epworth Villa under the Plan and/or the Bankruptcy Code;

(i)      accomplishment of distributions to Holders of Allowed Claims as provided herein;

(j)      issuance of injunctions, entry of other Orders, or other Court action as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the terms of the Plan, the Confirmation Order, or any other Order of the Court;

(k)      entry of such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(l)      entry of Orders in aid of execution and consummation of the Plan as provided by Section 1142 of the Bankruptcy Code;

(m)      determination of disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(n)      hearing of any other matter, or for any other purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)      entry of a Final Decree closing the Chapter 11 Case.

{S319942;9}

**ARTICLE XIII**

**CONFIRMATION REQUEST**

Epworth Villa requests confirmation of the Plan under Sections 1129(a) and, if necessary, 1129(b) of the Bankruptcy Code.

**DATED** this 8th day of December, 2015.

CENTRAL OKLAHOMA UNITED
METHODIST RETIREMENT
FACILITY, INC. d/b/a Epworth Villa

By: _____
    John C. Harned, President

COUNSEL:

*/s/ G. Blaine Schwabe, III*
G. Blaine Schwabe, III, OBA No. 8001
Elizabeth A. Cooper, OBA No. 31026
**Gable & Gotwals, P.C.**
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7101
Telephone: 405.235.5500
Facsimile: 405.235.2875
gschwabe@gablelaw.com
ecooper@gablelaw.com

Sidney K. Swinson, OBA No. 8804
Mark D.G. Sanders, OBA No. 22922
Brandon C. Bickle, OBA No. 22064
**Gable & Gotwals, P.C.**
1100 ONEOK Plaza
100 West Fifth Street
Tulsa, Oklahoma 74103
Telephone: 918.595.4800
Facsimile: 918.595.4990
sswinson@gablelaw.com
msanders@gablelaw.com
bbickle@gablelaw.com

*Attorneys for Epworth Villa*

{S319942;9}

# EXHIBIT A

[LITIGATION TRUST AGREEMENT]

## EPWORTH VILLA LITIGATION TRUST AGREEMENT

This trust agreement ("Agreement") is entered into as of _____, 2015, between Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa, an Oklahoma not-for-profit corporation ("Epworth Villa") and _____ ("Litigation Trustee").

## RECITALS

A.    On July 18, 2014, Epworth Villa  filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 14-12995.

B.    On December 8, 2015, Epworth Villa filed its *Second Modified Plan of Reorganization (With Technical and Clarifying Revisions, Dated October 29 and December 8, 2015)* (the "Plan") pursuant to 11 U.S.C. §1121.  The Bankruptcy Court entered its Confirmation Order confirming the Plan on _____, 2015.

C.    The Plan provides for the creation of a Litigation Trust to hold, liquidate, and dispose of certain of Epworth Villa's assets for the benefit of all Holders of Allowed Class 6 Claims, and (after full satisfaction of the Class 6 Claims and before any distribution to Epworth Villa) any balance of Allowed Class 4 Claims not covered by indemnity insurance ("Beneficiaries").  This Agreement is executed in order to establish the Litigation Trust, as provided for in the Plan, and to facilitate implementation of the Plan.

D.    The parties intend that the Litigation Trust qualify as a liquidating trust as described in Treasury Regulation §301.7701-4(d), which liquidating trust generally shall be treated as a grantor trust for United States federal income tax purposes.

## ARTICLE I
### DEFINITIONS

Certain capitalized terms used in this Agreement are defined within the body of this Agreement.  Any other capitalized terms found in this Agreement, and not otherwise defined herein, shall have the meaning ascribed to such terms in the Plan; and if not defined therein, shall have the meaning ascribed to them in Bankruptcy Code or the Bankruptcy Rules (and shall be construed in accordance with the rules of construction thereunder).

## ARTICLE II
### CREATION OF TRUST

2.1    Declaration of Trust.  For good and valuable consideration, the receipt whereof is hereby acknowledged by the undersigned, and pursuant to the terms of the Plan, Epworth Villa executes this Agreement; and, subject to the provisions of Section 2.2 below, shall irrevocably transfer, absolutely assign, convey, set over, permit the vesting in, and/or deliver to, the Litigation Trustee, and his/her successors and assigns, the Litigation Trust Assets in trust for the benefit of the Beneficiaries, at the times and for the uses and purposes stated herein and in the Plan.

{S319942;9}

2.2    <u>Transfer of Litigation Trust Assets</u>.    Transfer to, and vesting in, the Litigation Trust of the Litigation Trust Assets shall be deemed a transfer from Epworth Villa and for the benefit of the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Litigation Trustee to hold in trust for the benefit of the Beneficiaries.  The Beneficiaries shall be treated as the grantors and deemed owners of the Litigation Trust.  At the times stated in the Plan, title to the Litigation Trust Assets shall pass to the Litigation Trust free and clear of all liens and interests, in accordance with Section 1141 of the Bankruptcy Code.

2.3    <u>Cooperation & Support</u>.    Epworth Villa shall insure that its officers and other employees will cooperate with information sharing, document production and witness testimony in connection with the pursuit of recovery on the Litigation Trust Assets, and reasonably make such employees available to the Litigation Trustee and counsel for the Litigation Trust as necessary to recover value from the Litigation Trust Assets.

2.4    <u>Exculpation</u>.    Neither Epworth Villa, nor any of its directors, officers, employees, attorneys or other representatives shall have any responsibility for, or incur any liability related to, the Litigation Trustee's exercise of rights hereunder.

2.5    <u>Valuation</u>.    The Litigation Trustee shall cause a valuation to be made of the Litigation Trust Assets and that valuation shall be used by the Litigation Trustee and the Beneficiaries for all federal income tax purposes.

2.6    <u>Excess Cash</u>.    The Litigation Trust shall not be permitted to retain Cash or Cash equivalents in excess of a reasonable amount necessary to establish the reserves provided for in Section 3.4(b) hereof, and to maintain the value of the Litigation Trust Assets during liquidation.

2.7    <u>Purpose of Trust</u>.    The primary purpose of the Litigation Trust is the liquidation of the Litigation Trust Assets, distribution of the proceeds thereof, and the maintenance and preservation of the Litigation Trust Assets in furtherance thereof, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably supportive of, and consistent with, the liquidation purpose of the Litigation Trust.

**ARTICLE III**
RIGHTS, POWERS AND DUTIES OF LITIGATION TRUSTEE

3.1    <u>Status of Litigation Trustee</u>.    On the Confirmation Date of the Plan, the Litigation Trustee shall be the representative of the Litigation Trust and shall have the rights and powers provided for in this Agreement and in the Plan.  With respect to any Estate Claim in which the Litigation Trust obtains an interest pursuant to the terms of the Plan, the Litigation Trustee may retain and enforce such action pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.

3.2    <u>Authority and Duties</u>.    Subject to any limitations or more specific direction contained in, or as otherwise provided by, this Agreement or in the Plan, the Litigation Trustee shall have the following powers, authorities and duties:

(a)    use his/her best efforts, within a reasonable time-frame, to liquidate the Litigation Trust Assets and maximize the amount of liquidation proceeds derived therefrom, including without limitation, commencing or continuing such

litigation as he/she deems necessary and appropriate, enforcing claims of the Litigation Trust, and enforcing judgments and collecting other amounts due with respect to such claims;

(b)    determine and implement the settlement, abandonment or dismissal of any litigation, or disposal or abandonment of any asset, held by the Litigation Trust;

(c)    receive, hold, deposit and invest all funds received (including, but not limited to, opening and maintaining bank accounts);

(d)    in general, without in any manner limiting any of the foregoing, deal with the Litigation Trust Assets, or any part or parts thereof, in all other ways as would be lawful for any person owning the same to deal therewith, whether similar to or different from the ways herein specified, provided, that the investment powers of the Litigation Trustee, other than those reasonably necessary to maintain the value of the assets of the Litigation Trust and to further the liquidating purpose of the trust, are limited to the power to invest in interest-bearing government securities or a money market fund consisting of government securities having a maturity date not exceeding one (1) year;

(e)    administer and maintain the Litigation Trust, including payment in the ordinary course of reasonable and necessary expenses incurred by him/her in administering the Litigation Trust ("Trust Expenses");

(f)    retain or discharge such professionals, including attorneys, as he/she deems necessary and appropriate, and pay each such professional's reasonable fees and expenses as Trust Expenses;

(g)    obtain and pay for insurance coverage relative to the proper performance of his/her duties under the Plan and this Agreement, and to provide indemnification for himself and others provided for in the Plan and/or this Agreement;

(h)    calculate and implement distributions from the Litigation Trust; and

(i)    assume and discharge such other duties as are reasonable and necessary to administer the Litigation Trust as contemplated under the Plan and this Agreement.

3.3    Expenses.  The Litigation Trustee may incur Trust Expenses.  The amount of any fees and expenses incurred by or on behalf of the Litigation Trustee on or after the Confirmation Date (including reasonable fees and expenses of counsel, accountants, and others retained by the Litigation Trustee in connection with its administration of the Litigation Trust) shall be treated as Trust Expenses and shall be paid in Cash out of funds held by the Litigation Trust.

3.4    Distributions.

(a)    *Distribution Frequency*.  The Litigation Trustee shall make, or shall designate an entity to make, all distributions to the Beneficiaries on such dates as the Litigation

{S319942;9}

Trustee shall in his/her discretion determine to be appropriate; *provided, however*, (i) an initial distribution of not less than $250,000 shall be made to the Holders of Allowed Class 6 Claimsas soon as practicable after the Distribution Date, and (ii) a distribution of not less than $250,000 shall be made to the Holders of Allowed Class 6 Claims as soon as practicable after the second installment of funds received from Epworth Villa in accordance with Section 6.04 of the Plan; and *further provided* that the Litigation Trustee shall distribute at least annually all income and gain of the Litigation Trust which the Litigation Trustee determines is properly distributable after payment of Trust Expenses.

       (b)    *Reserves*.

          (i)  The Litigation Trustee shall retain and reserve such funds as are reasonably necessary to satisfy the Trust Expenses.

          (ii)  Such reserved property, and any interest or income paid thereon, shall either be (x) held by the Litigation Trustee in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States Government and guaranteed by the United States Government, and having (in either case) a maturity of not more than one (1) year.

       (c)    *Distribution Mechanics*.  Each distribution shall be made *pro rata* in accordance with the percentage each Beneficiary's then-held beneficial interest bears to the total of all beneficial interests in the Litigation Trust, in the order specified in Paragraph "C" of the Recitals.

       (d)    *Unclaimed Distributions*.  If any Beneficiary entitled to a distribution from the Litigation Trust has not negotiated any check drawn in payment of such distribution within ninety (90) days of the completion of the Litigation Trust's final distribution, any such un-negotiated distribution(s) otherwise due to such Beneficiary shall be released from the Litigation Trust and thereupon become the sole property of Epworth Villa as the Reorganized Debtor; provided however, that nothing contained in this Agreement or the Plan shall require the Litigation Trustee or Reorganized Debtor to attempt to locate such Beneficiary.

       (e)    *Surplus*.  If a surplus of funds exists after satisfaction of all Trust Expenses and Beneficiary Claims, such surplus funds shall re-vest in Epworth Villa as the Reorganized Debtor.

    3.5    <u>Reporting</u>.

       (a)    Within twenty (20) days after the end of each calendar quarter, or at such other intervals as the Oversight Committee shall require, the Litigation Trustee shall deliver to each member of the Oversight Committee a statement showing all receipts and disbursements of the Litigation Trust during such quarter.  Such statements are to be certified by the Litigation Trustee as true and accurate in all material respects to the best of the information and belief of the Litigation Trustee.

       (b)    The Litigation Trustee shall maintain a record of the Trust Expenses incurred, and shall make that record, as well as all other books and records prepared by or on

{S319942;9}

behalf of the Litigation Trustee, available for inspection and review by any Beneficiary upon reasonable notice.

3.6    Tax Returns.  The Litigation Trustee shall, as necessary, file tax returns and other filings with governmental authorities on behalf of the Litigation Trust, and with respect to the Litigation Trust Assets it holds, including tax returns for the Litigation Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations.  Allocations of income, deduction and credit shall be made to the Beneficiaries in accordance with the respective amount of their beneficial shares in the order specified in Paragraph "C" of the Recitals.

3.7    Compensation.  The Litigation Trustee shall be entitled to compensation for services rendered in administering the Litigation Trust at his/her standard hourly rates charged for like services, and reimbursement for reasonable out-of-pocket expenses.  Such compensation shall be treated as Trust Expenses and shall be paid in Cash out of funds held by the Litigation Trust.  With respect to compensation and other sums to be paid to the Litigation Trustee or to any professional retained by the Litigation Trustee, itemized invoices containing a description of services and expenses incurred shall be submitted to the Oversight Committee prior to payment.  The Litigation Trustee shall be entitled to pay the invoiced amount unless, within twenty (20) days of submission of said invoices, he/she is served with written notice from the Oversight Committee that some or all of such amount is disputed by it.

3.8    No Bond.  The Litigation Trustee shall not be obligated to provide any bond or surety or other security for the performance of any of his/her duties, unless otherwise required by the Oversight Committee.  All costs and expenses of procuring any such bond shall be deemed a Trust Expense, and paid from the funds of the Litigation Trust.

3.9    Resignation.  The Litigation Trustee may resign at any time by providing at least thirty (30) days' written notice to the members of the Oversight Committee.

**ARTICLE IV**
OVERSIGHT COMMITTEE

4.1    Constitution.  An Oversight Committee consisting of each of the Holders of the two (2) largest Allowed/Estimated Plan Class 6 Claims, and after satisfaction of all Class 6 Claims, the Holders of the two (2) largest Allowed or Estimated Plan Class 4 Claims, willing to serve, has been established by the Plan.  Each member of the Oversight Committee shall have one vote for each dollar of its Allowed/Estimated Claim.  All decisions by the Oversight Committee shall be made by majority of the votes cast by members of the Committee.  In the event of a vacancy on the Oversight Committee, the holder of the next largest Allowed Class 6 Claim, if any, who is willing to serve, but not already serving, shall be appointed to the Oversight Committee.

4.2    Trustee Appointment.  The Oversight Committee has heretofore appointed the Litigation Trustee.

{S319942;9}

4.3    Authority.  The Oversight Committee may direct, control and review the activities and performance of the Litigation Trustee. The Oversight Committee may provide written direction to the Litigation Trustee with respect to decisions to distribute Litigation Trust Assets, or to commence, settle, compromise or dismiss claims or causes of action of the Litigation Trust with respect to any of the Litigation Trustee's duties, rights and responsibilities and the Litigation Trustee shall be bound to comply with such written direction.  In the event the Oversight Committee does not provide written direction with respect to any of the foregoing, the Litigation Trustee shall make such decision on the basis of the Litigation Trustee's independent judgment.  Notwithstanding the foregoing, with respect to any decision to settle, compromise or dismiss claims or causes of action, the Litigation Trustee shall, in each instance, first submit a written recommendation to the Oversight Committee and shall thereafter exercise his/her independent good faith judgment with respect to such decision only if the Oversight Committee fails to provide written direction to the Litigation Trustee within twenty (20) days thereafter.  If in the exercise of his fiduciary responsibilities the Litigation Trustee determines that there exist such extraordinary circumstances that it is not prudent or feasible to delay a decision for the full twenty (20) day period specified in the previous sentence, he/she may shorten such period, provided however, that in no event shall such period be less than five (5) business days.

4.4    Trustee Removal.  The Oversight Committee may at any time terminate the appointment of, and remove, the Litigation Trustee.

4.5    Successor Trustee Appointment.  In case of the resignation, removal or death of the Litigation Trustee, a successor shall thereupon be appointed by the Oversight Committee. If possible, the predecessor Litigation Trustee shall furnish a final accounting and statement of Litigation Trust Assets, as of his/her termination date, to the successor Litigation Trustee and the Oversight Committee.

## ARTICLE V
## LIABILITY LIMITATIONS

5.1    General Indemnification.  The Litigation Trust shall indemnify and hold harmless any person or other entity who was or is a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person or other entity is or was the Litigation Trustee, a Beneficiary, a member of the Oversight Committee, or an agent, attorney, accountant or other professional for such person or other entity, against all costs, expenses, judgment, fines, and amounts paid in settlement, actually and reasonably incurred by such entity in connection with such action, suit or proceeding, or the defense or settlement thereof, of any claim, issue or matter therein, to the fullest extent, except to the extent attributable to willful misconduct or gross negligence.  Costs or expenses incurred by any such person or other entity in defending any such action, suit or proceeding may be paid by the Litigation Trust in advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Litigation Trustee and the Oversight Committee.  The Litigation Trustee may in his/her discretion purchase and maintain insurance on behalf of any person or other entity who is or was a beneficiary of this provision.

- 6 -

{S319942;9}

5.2    <u>No Recourse by Third Parties</u>.   No recourse shall ever be had, directly or indirectly, against the Litigation Trustee personally, or against any agent, attorney, accountant or other professional for the Litigation Trustee, or against any member of the Oversight Committee, by legal or equitable proceedings, or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by such persons or other entities under the Plan, this Agreement, or by reason of the creation of any indebtedness by the Litigation Trustee under the Plan or this Agreement for any purpose authorized by the Plan or this Agreement; it being expressly understood and agreed that all such liabilities, covenants, and agreements shall be enforceable only against, and be satisfied only out of, the Litigation Trust Assets or such part thereof, as shall under the terms of any such agreement, be liable therefor, or shall be evidence only of a right of payment out of the Litigation Trust Assets.

5.3    <u>Limited Liability</u>.   Neither the Litigation Trustee, nor any member of the Oversight Committee, shall be liable for any act he/she/it may do or omit to do while acting in good faith in the exercise of his/her best judgment, and the fact that such act or omission was advised by an authorized attorney for the Litigation Trustee, shall be conclusive evidence of such good faith and best judgment; nor shall such entities be liable in any event, except for their own gross negligence or willful misconduct.

5.4    <u>No Liability for Acts of Predecessor</u>.  No successor Litigation Trustee shall be in any way responsible for the acts or omissions of any Litigation Trustee in office prior to the date on which such person becomes a Litigation Trustee, nor shall (s)he be obligated to inquire into the validity or propriety of any such act or omission unless such successor Litigation Trustee expressly assumes such responsibility.   Any successor Litigation Trustee shall be entitled to accept as conclusive any final accounting and statement of Litigation Trust Assets furnished to such successor Litigation Trustee by such predecessor Litigation Trustee and shall further be responsible only for those Litigation Trust Assets included in such statement.

5.5    <u>No Implied Obligations</u>.  The Litigation Trustee shall not be liable (and then only for gross negligence or willful misconduct) except for the performance of such duties and obligations as are specifically provided in the Plan or in this Agreement, and no other or further covenants or obligations shall be implied in this Agreement.

5.6    <u>Representations</u>.  Neither the Litigation Trustee, nor any member of the Oversight Committee, shall be responsible in any manner whatsoever for the correctness of any recital, statement, representation, or warranty herein, or in any document or instrument evidencing or otherwise constituting a part of the Litigation Trust Assets.

## ARTICLE VI
### TERMINATION

The Litigation Trust shall terminate, without any further action by the Litigation Trustee, on the date that is ninety (90) days following the Litigation Trustee's tender of a final distribution to Beneficiaries.

{S319942;9}

## ARTICLE VII
### MISCELLANEOUS

      7.1   <u>Notices</u>.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement and the Plan, shall be in writing and shall be delivered personally, by certified mail or by generally recognized overnight courier to:

          (a)      If to the Litigation Trustee:

                     _____

          (b)      If to Epworth Villa:

              John C. Harned
              President & Chief Executive Officer
              Epworth Villa
              14901 N. Pennsylvania Ave.
              Oklahoma City, OK  73134

with copies to:

| G. Blaine Schwabe, III | -and- | Sidney K. Swinson |
|---|---|---|
| Gable & Gotwals, P.C. | | Gable & Gotwals, P.C. |
| One Leadership Square, 15th Floor | | 1100 ONEOK Plaza |
| 211 North Robinson | | 100 W. 5th Street |
| Oklahoma City, OK  73102-7101 | | Tulsa, OK  74103 |
| gschwabe@gablelaw.com | | sswinson@gablelaw.cm |
| (405) 235-2875 (Fax) | | (918) 595-4828 (Fax) |

      7.2   <u>Effectiveness</u>.  This Agreement shall become effective upon the concurrence of its subscription by the Litigation Trustee and Confirmation Date of the Plan.

      7.3   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

      7.4   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Agreement shall be governed by, construed under, and interpreted in accordance with, the laws of the State of Oklahoma.

      7.5   <u>Headings</u>.  Section names and other headings used in this Agreement are for convenience only and shall not affect the construction hereof.

      7.6   <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

{S319942;9}

7.7    <u>Successors</u>.  This Agreement shall bind and inure to the benefit of the named parties hereto and their respective successors, including any successor Litigation Trustee.

7.8    <u>Entire Agreement</u>.  This Agreement (including the Recitals), the Plan and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations except as set forth herein or therein.  This Agreement, the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, in the Plan or the Confirmation Order, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, or assigns any right to remedies under or by reason of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first written above.

CENTRAL OKLAHOMA UNITED
METHODIST RETIREMENT FACILITY,
INC. d/b/a Epworth Villa

By:    _____
John C. Harned
Its President


LITIGATION TRUSTEE ACCEPTANCE

The Litigation Trustee accepts the Litigation Trust imposed by this Agreement and the Plan, and agrees to perform upon and subject to the terms and conditions set forth herein, and in the Plan.

LITIGATION TRUSTEE:

_____

{S319942;9}